Loeser's Estate.

"It is argued on behalf of Margaret Hudson that the legacy to her and her husband, being to persons who were married, was, therefore, a gift by entireties which would survive to her.

"There is ample authority for such a contention in Gillan's Exec'rs *v.* Dixon, 65 Pa. 395; Parry's Estate, 188 Pa. 38; Klenke's Estate, 210 Pa. 572, and Mitchell's Estate, 15 Phila. 597. The last few words of the second paragraph of the will, however, negative any such intent, because therein the testator directed that the gift was to be 'theirs and each of theirs absolutely, share and share alike.' The gift to Lemuel, Margaret and Samuel was to be share and share alike equally.

"I have reached the conclusion that the share of the legacy bequeathed to Lemuel Hudson lapsed and falls into residue, and will be held for the residuary legatees."

*De Forrest Ballou,* for Margaret Hudson, exceptant.

*Bevan A. Pennypacker* and *William Clarke Mason,* for Samuel Russell, exceptant.

*Connelly & Boylan,* for Christine E. Lucas and Frederick Miller, contra exceptions.

THOMPSON, J., Oct. 23, 1922.—The bequest of a going business to Lemuel Hudson and Margaret, his wife, and Samuel Russell, employees of the testator in said business, is not a gift to a class, nor do Lemuel Hudson and Margaret, his wife, take the same by entireties, for the reason that so to hold would be to ignore the latter part of the paragraph containing the said gift, which provides that the business is "to be theirs and each of theirs absolutely, share and share alike," as clearly set forth in the adjudication of the auditing judge. Consequently, the death of Lemuel Hudson in the lifetime of the testator caused his interest in said legacy to lapse and fall into the residuary estate.

The exceptions filed on behalf of Samuel Russell and Margaret Hudson must, therefore, be dismissed, and it is so ordered, and the adjudication is confirmed absolutely.

---

## Kreeger's Estate.

*Inheritance transfer tax—Clear residue—Expense of tombstone—Act of June 20, 1919.*

1. Under the Inheritance Transfer Tax Act of June 20, 1919, P. L. 521, the reasonable cost of a gravestone or similar memorial may be deducted from the total amount of personal property in calculating the clear residue upon which the tax is to be levied.

2. The amount so allowable will depend upon the size of the estate and other familiar considerations, and any extravagant expenditure, whether directed by the will or authorized by distributees, should be, as against the Commonwealth, reduced to a reasonable one. Where the gross estate left by a decedent amounted to about $48,000, $1000 for a tombstone was held to be reasonable.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1922, No. 588.

The facts appear from the adjudication of Gest, J., auditing judge, which was, in part, as follows:

"As to the suspended claim for tax on $1000 for headstone. The Commonwealth claimed tax on $2000, the amount actually expended, but this was

inadvertent, for all that was asked to be allowed in the settlement was $1000, and if the parties in interest chose to expend more, that was their own business, for they might do as they pleased. The question, therefore, is whether in this estate the cost of a tombstone, $1000, should be deducted in the calculation of the inheritance tax. The Commonwealth claimed that no allowance would be made whatever, and in support of this contention relied upon the decision of the Orphans' Court of Allegheny County in Magdalene A. King's Estate, not yet reported, the auditing judge, however, being furnished with a copy of the opinion. This makes it necessary for me to consider the law on the subject.

"The Act of June 20, 1919, P. L. 521, imposes a tax on the transfer of any property, real or personal, to persons or corporations when the transfer is by will or by the intestate laws from any person dying seized or possessed of the property upon the clear value of the property, and in ascertaining this clear value the act provides that the only deductions to be allowed from the gross value of such estates shall be the debts of the decedent and the expenses of the administration of such estates. The provision concerning the deduction of taxes paid to the United States Government or other states need not be considered in this adjudication: Smith's Estate, 29 Dist. R. 917; the only question raised in this case by the Commonwealth being whether the cost of a monument or gravestone should be deducted in arriving at the clear value of the estate passing from the decedent, or whether such expenditure is to be included as a debt of the decedent, i. e., included in the expenses of administration of the estate. This, however, states the question too narrowly, for funeral expenses have always been considered as deductible, just like a debt of the decedent himself, and are recognized as being in this category by paragraph 13 (a) and paragraph 15 (a) of the Fiduciaries Act of June 7, 1917, P. L. 447, the former of which, following the older Act of Feb. 24, 1834, par. 21, P. L. 70, provides: 'All debts owing by any person at the time of his decease shall be paid in the order following: 1. Funeral expenses, medicines furnished, &c.' And in Smith's Estate, 29 Dist. R. 917, it was held in an opinion, to which no exceptions were filed by the Commonwealth, that the Act of 1919 made no change in the settled practice on this point. Indeed, in this very case the funeral expenses were allowed as a deduction.

"It must, indeed, be admitted that it is the primary duty of the executor or administrator to bury the body of the decedent. As was said in Kitchen v. Wilkinson, 26 Pa. Superior Ct. 75, 80, 'a decent burial is the right of every one. It is a right springing from the necessities of the case and is recognized in all well-ordered communities,' and the duty of attending to or supervising the funeral is imposed upon the executor or administrator because he has control of the assets from which the expenses are paid. Our law recognizing this universal sentiment of our people has always been liberal in its attitude.

"In Middleton's Estate, 13 Dist. R. 811, Judge Ashman said: 'If obedience to the literal wording of the act is imperative, a provision for the funeral expenses of a decedent must be subject to the collateral inheritance tax, because these expenses form no part of the estate which passes for the use of father, mother or other privileged persons named in the Act of May 6, 1887, P. L. 79, and are, therefore, not exempt from the tax. Such a construction of the act would manifestly be open to ridicule. But the purchase of a burial lot is often a necessary item in the list of funeral expenses, and the erection of a tombstone therein has been judicially determined to belong to the same class: Dingee's Estate, 14 Dist. R. 225; Lutton's Estate, 17 Pa. Superior Ct. 342. The continued care of a grave, however, is almost as essential as its

2 D. & C.

purchase, and without undue straining of language may be said to belong to the original expenses. In the present case the gift was of $700, of which the income was to be applied to the care and repair of testator's cemetery lot and of the tombstone therein erected.' Vinot's Estate, 7 N. Y. Supp. 517, is to the same effect. And in Meyer's Estate, 18 Phila. 42, Judge Hanna said: 'Among the duties of an executor or administrator is to attend to the decent and proper interment of the remains of the decedent, and a reasonable and judicious expenditure for the purpose will always be approved. If this duty be performed by some member of the family, or even a stranger, without objection on his part, his assent will be presumed, and the estate liable for the amount paid or indebtedness incurred: France's Estate, 75 Pa. 220. This, at times, will necessarily include the purchase of a grave or cemetery lot. And although not strictly to be considered as within the meaning of the term 'funeral expenses,' the cost of an appropriate monument, or head and foot-stone, to mark the resting place of the dead, if warranted by all the surrounding circumstances, will also be recognized as a proper expenditure, and preferred, under the Act of Feb. 24, 1834, P. L. 70, in the order of payment of debts, etc.'

"It has been, indeed, held in several cases in other Orphans' Courts of this State that when the estate is insolvent, the cost of a tombstone is not a preferred claim, as in Gordon's Estate, 22 Dist. R. 1023 (Montgomery County). Admitting that this is so as against creditors, I do not think that the Commonwealth, as claimant of the tax, is in the same position. The Commonwealth is not a creditor of the decedent, but merely imposes a tax on the clear value of the estate passing to legatees or next of kin; that is, after the debts and funeral expenses have been paid; the rights of creditors are paramount to those of legatees and next of kin, and it may well be that, as against them, the expenses of a gravestone should not be allowed, because in cases of insolvency the funeral expenses are properly reduced to a minimum. To hold that the funeral expenses must be restricted to those attending the actual interment of the corpse is, in my opinion, too narrow a view in cases where the rights of creditors are not involved. In Hayes's Estate, 7 Pa. Superior Ct. 160, the court not only said that it was the duty of the executor to bury the decedent, but also to arrange for the care of the grave. The funeral expenses which are always allowed include customarily many charges that, strictly speaking, are not absolutely necessary. Shall we say that charges for embalming the body, for a new dress or suit of clothes, or for carriages or automobiles to convey the mourners to the graveyard, must be disallowed as against the Commonwealth? As against the distributees, there could be no question that a reasonable allowance for a tombstone would be sustained, as is shown in Miller's Estate, 18 Dist. R. 216, and Conway's Estate, 10 Dist. R. 509, in the latter case $700 being allowed from an estate of $25,000.

"I will refer to a few cases in other jurisdictions.

"In Liss's Estate, 78 N. Y. Supp. 969, it was held by the surrogate that in assessing the transfer tax a reasonable expenditure for a burial lot and the improvements to the same, in this case $470 for cost of lot and $235 for fencing and sodding, would be allowed as a reasonable deduction for funeral expenses in an estate amounting to a little over $10,000.

"In Morrow, Treasurer, v. Durant, 140 Iowa, 437, the decedent directed his executrix to build a tomb, the cost not to exceed $2000, and the court refused to award tax thereon. The court said: 'Whether the amount reserved for the erection of a tomb is 'reasonable' is a question of mixed law and fact to be determined in the law by all the circumstances of the case. . . . In the

absence of the superior rights of creditors or of persons having some legal claim upon the decedent, it would seem reasonable to say that this provision of the will raises a presumption of reasonableness, as far as the duties of the executrix are concerned.' And the court further said that the word 'debts' in the code included, in addition to debts owing by the decedent at the time of his death, a reasonable sum for funeral expenses, court costs, &c.

"In Edgerton's Estate, 35 N. Y. App. Div. 125, affirmed in 158 N. Y. 671, it was held that a fund provided for the erection of a monument of the decedent and the care of the grave is for funeral expenses, and not subject to taxation under the act taxing gifts made in contemplation of death.

"In State ex rel. v. Probate Court, 138 Minn. 107, it was said: 'It is quite generally held in the case of solvent estates that the necessary cost of a reasonable tombstone placed at the grave of a deceased person is properly classed as funeral expenses or expenses of administration which may be allowed to an executor or administrator in settlement of his account: Pease v. Christman, 158 Ind. 642, 64 N. E. Repr. 90.'

"The opinion recently filed by the Orphans' Court of Allegheny County in Magdalene King's Estate is relied upon by the Commonwealth. I entertain unfeigned respect for the opinion of this distinguished court, but with great regret am unable to concur in it, nor do I think that the cases cited in King's Estate sustain the decision. To sum up, I would consider the reasonable cost of a gravestone or similar memorial as part of the funeral expenses, and allowed to the same extent exactly as funeral expenses always have been in this Commonwealth. The amount so allowable will depend upon the size of the estate and other familiar considerations, and any extravagant expenditure, whether directed by the will or authorized by distributees, should be, as against the Commonwealth, reduced to a reasonable sum.

"In the present case the gross estate left by the decedent consisted of personal estate, $31,625.24, and real estate, $16,333.33, and the balance of personalty for distribution shown by the account, after payment of $2000 expended for the monument, is $24,338.76, or, adding this sum, the net estate is $26,338.76, and the question for me is whether an allowance of $1000 therefor is reasonable, for that is all that was claimed as against the Commonwealth. I think it is, and it may be noted that the undertaker's charges are over that sum, and this sum of $1013.63 and $480 for a cemetery lot were allowed by the appraiser in settling the tax. Accordingly, this claim of the Commonwealth for tax is dismissed."

Exceptions were taken by the Commonwealth.

*Robert W. Finletter*, for exceptions; *Sidney E. Smith*, contra.

PER CURIAM, Oct. 19, 1922.—We see no reason to add to what has already been said by the auditing judge, and, as we concur in his opinion, the exceptions are dismissed and the adjudication is confirmed absolutely.

NOTE.—Judge Trimble's reasoning for the court *in banc*, in disposing of the exceptions in King's Estate (O. C. Allegheny Co., Sept. T., 1921, No. 346), cited in the adjudication, was as follows:

"The question involved is whether the clear value of an estate is found for the purpose of assessing the inheritance taxes without deducting the cost of a monument. . . .

"It is necessary to decide whether a tombstone, monument, mausoleum or other marker for a grave is a debt of the decedent or a part of the expense of administration. If it is either, the amount credited, if reasonable, is exempt from taxation under the Direct and Collateral Inheritance Tax Act of June 20, 1919.

## Kreeger's Estate.

"The Act of June 20, 1919, P. L. 521, provides, in section 1, 'that a tax shall be and is hereby imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases:

"'(a) When a transfer is by will or by the intestate laws of this Commonwealth from any person dying seized or possessed of the property while a resident of the Commonwealth, whether the property be situated within this Commonwealth or elsewhere.'

"The method of determining the clear value is indicated in section 2 as follows: 'In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values of such estates shall be the debts of the decedent and the expenses of the administration of such estates.'

"Section 13 (a) of the Fiduciaries Act of 1917 provides as follows: 'All debts owing by any person within this State at the time of his decease shall be paid by his executors or administrators, so far as they have assets, in the manner and order following, viz., funeral expenses.'

"It is quite certain that a memorial of any kind erected over the grave is not included within the meaning of the words 'funeral expenses.' A funeral ends by inhumation, and we cannot say that the legislature intended more. To this extent there is a preferred claim or debts allowed by the statute. There is no legislative authority for holding that the cost of a marker for a grave is a debt or expense of administration, and if it is, it must be shown so to be by judicial authority. Much consideration has been given by counsel to McGlinsey's Estate, 14 S. & R. 64, decided in 1856 by Chief Justice Tilghman. This is urged as conclusive upon us and an authority which settled the present controversy. There the Chief Justice said: 'The deceased has a good estate, and no children, and the widow, who was entitled to one-half, wished to be liberal in honor of his memory. A handsome tombstone was erected over a vault in which the body was interred, and this was the principal article of expense. I think it should be allowed.' Following this case came Porter's Estate, 77 Pa. 43, where it was held that the expense of an appropriate tombstone was a legitimate item of credit in an executor's account, and the same thing was said in Webb's Estate, 165 Pa. 330. But in this case Mr. Justice Green, in commenting upon Wynkoop v. Wynkoop, 42 Pa. 293, said: 'This question (the cost of a tombstone) did not arise there, and, in any event, the act of burial includes all the usual incidents of decent burial, of which one, at least, is the erection of a suitable tombstone.' In turning back to Wynkoop v. Wynkoop, *supra*, we find that Mr. Justice Reed said: 'The absolute duty to bury terminated with the burial, and no subsequent expenses would be a legal charge upon the estate of the decedent, whether solvent or insolvent.' In Lutton's Estate, 17 Pa. Superior Ct. 342, it was held that the cost of a tombstone 'was not a debt of the decedent, but, as had been adjudged by the Orphans' Court, was a reasonable expense incurred in the settlement of his estate.'

"From the above survey of appealed cases we conclude that claims for monument or other memorials for deceased persons are always allowable in solvent estates, and this precludes all argument that the cost is a debt, and it is not allowable as an expense of administration, because it is no part of the duty of an administrator to contract for the erection of any memorial. The whole subject is correctly expressed in Barclay's Estate, 2 W. N. C. 447, decided by Judge Hanna, of the Orphans' Court of Philadelphia. After saying that the duties of an administrator end with burial, he continued: 'Yet recognizing the almost universal custom from time immemorial of distinguishing the resting-place of the dead by some appropriate symbol, the courts have permitted executors and administrators to expend for this purpose a reasonable portion of the estate.' It seems clear that Judge Hanna's opinion furnishes the only justification for such expenditures, and that is custom; and the probable reason for this is that when estates are solvent, the heirs-at-law or next of kin shall not be permitted to enjoy all of the remaining after debts are paid without 'distinguishing the resting-place of the dead.' The 'passing' of the estate to those in succession does not occur until distribution.

"It appears from the cases above cited that the cost of a memorial is neither a debt nor a part of the expenses of administration, and is, therefore, not deductible in finding the clear value of an estate for the purpose of assessing inheritance taxes "